UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

MICHAEL D. NIEDZIELSKI,                         Case No. DT 10-03272
                                                Hon. Scott W. Dales

            Debtor.

_____/

OPINION AND ORDER GRANTING LAKE MICHIGAN
CREDIT UNION'S MOTION FOR RELIEF FROM AUTOMATIC STAY

            PRESENT:    HONORABLE SCOTT W. DALES
                        United States Bankruptcy Judge

On October 19, 2010, in Traverse City, Michigan, the court held its final hearing to consider the Motion for Relief from Stay (the "Motion," DN 30) filed by Lake Michigan Credit Union (the "Credit Union"). At the hearing, the Credit Union appeared through counsel and so did the Debtor Michael Niedzielski (the "Debtor") and his former wife, Kathleen Niedzielski (with the Debtor, the "Niedzielskis"). Though the parties had an opportunity to present testimony, they instead agreed that the court should render its decision based upon stipulated exhibits the Credit Union prepared, including a number of documents arising out of the Niedzielskis' divorce proceedings.

Prior to their divorce, the Niedzielskis owned a horse farm and homestead north of Traverse City, Michigan (the "Farm") which they mortgaged to the Credit Union (Exhibit C) to secure a loan to the Debtor evidenced by a Fixed/Adjustable Rate Note dated November 24, 2006 in the amount of $995,000.00 (Exhibit B).

Thereafter, the Niedzielskis experienced difficulties in their marriage and eventually divorced, as recited in a Judgment of Divorce dated November 20, 2009 (the "JOD," Exhibit F).

In the JOD, the Honorable Thomas G. Power incorporated the Niedzielskis' agreement to divide marital property, including the Farm, as expressed in their Property Settlement Agreement dated October 15, 2009 (the "Settlement," Exhibit G).

Pursuant to the JOD and the Settlement, the Debtor quitclaimed to Kathleen Niedzielski all right, title and interest in the Farm. *See* Quit Claim Deed (Exhibit D). Immediately above the signature line, the Quit Claim Deed recites that it is "given pursuant to the terms and conditions of a Judgment of Divorce entered in the 13th Judicial Circuit Court for the County of Grand Traverse, captioned *Kathleen Ann Niedzielski vs. Michael D. Niedzielski*, Case No. 09-6325-DM." *Id.*

Relying on the Quit Claim Deed, the Credit Union argues that the Debtor had no interest in the Farm on the petition date, and the Farm was therefore excluded from the property of his bankruptcy estate. The Credit Union contends that because the estate has no equity in the Farm, that property cannot be necessary to any reorganization, and cause exists to lift the stay.[1]

The Debtor argues that Section 1.3A of the Settlement preserved for him an interest in the Farm by giving him the right to receive one-half of the Farm's net sale proceeds remaining after payment of all debts secured by the Farm, and other credits due to Kathleen Niedzielski. According to the Debtor, this means he has a lien against the Farm. The Credit Union opposes this construction of the Quit Claim Deed and the Settlement.

The court has considered each of the documents and has determined (for purposes of this Motion) that the Debtor had no *in rem* interest in the Farm following delivery of the Quit Claim Deed to Kathleen Niedzielski. Rather, construing the documents, the court concludes that the Debtor has, at most, a chose in action to hold Kathleen Niedzielski accountable for one-half of

---

[1] In the Motion as originally drafted, the Credit Union argued that the Chapter 12 co-debtor stay does not apply, given the nature of the underlying debt. At the final hearing, the Debtor announced his intention to convert his case to Chapter 11, and the parties agreed that the imminent conversion would render moot this aspect of their dispute.

the net sale proceeds as prescribed in the Settlement, and in any event, cause exists to lift the automatic stay.  The court offers the following reasons to support these conclusions.

During their divorce proceedings, the Niedzielskis were both represented, and the hands of counsel are evident in the Settlement's precise drafting.  Of particular importance, the drafters took care to create a lien with respect to some of the marital property to be distributed or divided in some instances, and to refrain from creating a lien in others.  For example, with respect to the various Rite-Aid properties and the Lindale Road property, the Settlement at Sections 3.3, 3.5, and 7.2 gives Kathleen Niedzielski a lien to secure the Debtor's obligations under the Settlement.  However, with respect to the Farm, the parties did not use comparable language to favor the Debtor with a lien.  Indeed, they selected the Quit Claim Deed as their method of conveyance -- strongly evincing the intent that Kathleen Niedzielski should hold clear title to the Farm.  *See* MCL § 565.3 ("A deed of quit claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale").  This form of transaction would give her a freer hand in selling the Farm, or further encumbering it, without having to consult with the Debtor.  The court infers that this freedom to dispose of the Farm may have been important to the Debtor's ex-wife because the Farm was also her home and because the parties strongly expressed in the JOD their intention to sever ties.  Therefore, the court interprets the Settlement as giving the Debtor only a claim against his ex-wife for one-half of the sale proceeds as prescribed in Section 1.3A, but not an interest in the Farm.

In addition, the Quit Claim Deed's reference to the JOD does not include language typically associated with reserving rights in the grantor, such as "subject to" or "reserving in the grantor" or words of similar import.  State law forbids courts from implying covenants in deeds, MCL § 565.5, and the court believes that implying a lien or other reservation or exception in a

quitclaim deed is even more problematic.  Indeed, the leading authority on Michigan real estate law described quitclaim deeds in this way:

> In general, a quitclaim deed is construed as conveying all the grantor's interest in the described property unless some interest is expressly excepted or reserved.  Deeds should be strictly construed against the grantor to give the grantee the greatest estate that the deed's terms permit.  Reservations and exceptions are narrowly construed. . . .

John G. Cameron, Jr., 1 Michigan Real Property Law, § 10.19, p. 360 (3d. ed., ICLE) (citation omitted).  The court construes the reference to the JOD not as a reservation or exception, but simply a recital showing the transaction's context.

Even if the court were to interpret the Quit Claim Deed and the Settlement as reserving a lien in the Debtor's favor, the court would nevertheless conclude that the Farm itself is not included within the property of the estate under 11 U.S.C. § 541(a).  At most, the Debtor's lien would be included, but not his former wife's interest in the Farm.  For this conclusion, the court relies on 11 U.S.C. § 541(d) which provides in relevant part as follows:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property  . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

As applicable here, the Bankruptcy Code provides that Kathleen Niedzielski's interest in the Farm would not be included within the property of the estate even assuming the Debtor asserted a lien or other interest akin to a mortgage.  In short, the property of the estate would be limited to the Debtor's supposed lien against the Farm.

As the Credit Union's counsel pointed out during the hearing, whatever interest the estate has in the Farm, if any, will be protected in the state court proceedings because the interest is at most a junior lien, subject to the Credit Union's mortgage under well-established priority rules.

The court understands that permitting the Credit Union to foreclose on the Farm in Kathleen Niedzielski's hands may result in a distressed sale producing less of a surplus potentially available to the Debtor and his creditors, but the court nevertheless concludes that cause exists to lift the automatic stay. The estate may take steps to protect whatever interest in sale proceeds it may have against the consequence of the foreclosure that the Debtor and his then-wife bargained for when they subscribed to the Mortgage.

Finally, the court notes that proceedings regarding relief from the automatic stay are necessarily summary in nature, as indeed was this contested matter. The court does not intend to finally resolve any issues regarding the validity, priority or extent of any interest in the Farm or other property of the estate, as that would require an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(2). *In re Plastech Engineered Products, Inc.,* 382 B.R. 90, 117 (Bankr. E.D. Mich. 2008). Rather, the court has construed the documents at the parties' request and has determined in summary fashion that cause exists to lift the stay.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Credit Union's Motion (DN 30) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Robert A. Stariha, Esq., James Bruinsma, Esq., Susan Jill Rice, Esq., Kathleen Niedzielski, Joseph A. Chrystler, Chapter 12 Trustee, Michael Niedzielski, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: October 28, 2010**